UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, ) | |
| ) | |
| v.   ) | No. |
| ) | |
| AIG FEDERAL SAVINGS BANK and   ) | COMPLAINT |
| WILMINGTON FINANCE, INC.,   ) | |
| Defendants.   ) | |
| ) | |

The United States of America alleges:

1. This action is brought by the United States to enforce the provisions of the Fair Housing Act, 42 U.S.C. §§ 3601-3619 (FHA), and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f (ECOA).

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1345, 42 U.S.C. § 3614, and 15 U.S.C. § 1691(h).  Venue is appropriate pursuant to 28 U.S.C. § 1391.

3. AIG Federal Savings Bank (AIG FSB) is a wholly-owned subsidiary of American International Group, Inc.  It is a federal savings bank with its principal place of business at One Alico Plaza, 600 King Street, Wilmington, Delaware.  AIG FSB engages in business typical of a financial depository and lending institution, including extending credit and making loans for the purchase of dwellings, and making loans secured by residential real estate.  AIG FSB is subject to the regulatory authority of the Office of Thrift Supervision (OTS).

4. Wilmington Finance, Inc., (WFI) is also a wholly-owned subsidiary of American International Group, Inc.  It is a Delaware corporation with its principal place of business at 401 Plymouth Road, Plymouth Meeting, Pennsylvania.  WFI is a mortgage company that engages in residential mortgage lending though marketing, sourcing, processing, underwriting, and closing

underwriting, and closing loans.

5. AIG FSB and WFI are subject to Federal laws governing fair lending, including the FHA and ECOA and the regulations promulgated under each of those laws. The FHA and the ECOA prohibit financial institutions from discriminating on the basis of, *inter alia*, race or color in their lending practices. AIG FSB and WFI are and have been "creditors" within the meaning of section 702(e) of the ECOA, 15 U.S.C. § 1691a(e), and have engaged in "residential real estate-related transactions" within the meaning of section 805 of the FHA, 42 U.S.C. § 3605.

6. In October 2007 the OTS conducted an examination of the lending practices of AIG FSB to evaluate its compliance with, among other laws, the Fair Housing Act and the Equal Credit Opportunity Act. Based on information gathered in its examination, the OTS determined that it had reason to believe that AIG FSB and WFI had engaged in a pattern or practice of discrimination on the basis of race by charging black borrowers higher broker fees than similarly situated white borrowers.

7. On December 21, 2007, following its determination described in the previous paragraph, the OTS referred this matter to the United States Department of Justice pursuant to 15 U.S.C. § 1691e(g).

8. Between approximately July 2003 and May 2006, pursuant to a Mortgage Loan Services Agreement between AIG FSB and WFI (Defendants), AIG FSB funded mortgage loans for which WFI provided marketing, sourcing (including identifying, approving, and monitoring mortgage loan brokers), processing, underwriting, closing, funding, and investor-finding services.

9. All loans made under the Mortgage Loan Services Agreement were originated by WFI

on behalf of AIG FSB and funded by and in the name of AIG FSB in accordance with AIG FSB's credit underwriting standards and other policies and procedures.

10. The services performed by WFI under the Mortgage Loan Services Agreement for and on behalf of AIG FSB included, but were not limited to, identifying, approving, and monitoring mortgage loan brokers; preparation and transmission of rate, product, and other information on mortgage loans to mortgage brokers; provision of pre-application loan-grading and qualification services to mortgage brokers and consumers; creation of loan applications and packages from information received from mortgage brokers and consumers; preparation and dissemination of legal disclosures and notifications to loan applicants; processing and documenting loan applications; and underwriting all loan applications in the name of AIG FSB.

11. Under the Mortgage Loan Services Agreement, between 2003 and 2006 WFI originated and AIG FSB funded approximately 179,000 home mortgage loans throughout the United States. Approximately 94% of these loans were "wholesale" loans procured by WFI through third-party mortgage brokers.

12. Mortgage brokers who supplied WFI and AIG FSB with wholesale loans were compensated in two ways: through direct fees paid by borrowers to brokers, and/or through yield-spread premiums paid by WFI and AIG FSB to brokers. Taken together, this compensation is hereinafter referred to collectively as "total broker fees."

13. It was the policy and practice of WFI and AIG FSB to allow brokers unsupervised and subjective discretion in setting the amount of their direct fees. WFI and AIG FSB placed ceilings on the amount of the yield-spread premium that could be paid to a broker in connection with a loan, but did not place any ceiling on direct fees. WFI and AIG FSB did not establish any

objective criteria to be followed by the brokers in setting direct fees, or oversee or supervise brokers in setting the amounts of direct fees, or monitor the amounts of direct fees for racially discriminatory disparities.

14. For each loan originated under the Mortgage Loan Services Agreement, information about each borrower's race and the amounts and types of broker fees paid was available to, and was known or reasonably should have been known by WFI and AIG FSB prior to the approval and funding of the loan.

15. From July 2003 to May 2006 black borrowers nationwide were charged total broker fees 20 basis points higher[1] as a percentage of the loan amount, on average, than the total broker fees charged to white borrowers for WFI and AIG FSB's loans. These disparities extended to at least the following 19 metropolitan areas in which AIG FSB and WFI made a substantial number of brokered loans to black and white borrowers: Atlanta, Baltimore, Birmingham, Cincinnati, Chicago, Cleveland, Detroit, Hartford, Kansas City, Las Vegas, Memphis, Nassau County, New York, Orlando, Philadelphia, Phoenix, Portland OR, St. Louis, and Tampa. In these MSAs black borrowers paid total broker fees ranging from 25 to 75 basis points higher, on average, than the total broker fees paid by white borrowers. All of these disparities are statistically significant.

16. The higher total broker fees charged to black borrowers are a result of WFI and AIG FSB's policy and practice of allowing unsupervised and subjective discretion by brokers in the setting of direct fees, and cannot be fully explained by factors unrelated to race that WFI and AIG FSB claim were taken into account.

---

[1] One basis point represents one hundredth of a percentage point (0.01%); thus a 25 basis point differential represents one quarter of one percent.

17. WFI and AIG FSB's policy and practice of allowing unsupervised and subjective discretion by brokers in the setting of direct fees is not justified by business necessity or legitimate business interests.

18. The Defendants' policies and practices, as alleged herein, constitute:

    a. Discrimination on the basis of race or color in making available, or in the terms or conditions of, residential real estate-related transactions, in violation of the fair Housing Act, 42 U.S.C. § 3605(a);

    b. Discrimination on the basis of race or color in the terms, conditions, or privileges of sale of a dwelling, in violation of the fair Housing Act, 42 U.S.C. § 3604(b); and

    c. Discrimination against applicants with respect to credit transactions on the basis of race or color in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)(1).

19. The Defendant's policies and practices, as alleged herein, constitute:

    a. A pattern or practice of resistance to the full enjoyment of rights secured by the Fair Housing Act, as amended, 42 U.S.C. §§ 3601-3619, and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f; and

    b. A denial of rights granted by the Fair Housing Act, as amended, to a group of persons that raises an issue of general public importance.

20. Persons who have been victims of Defendants' discriminatory policies and practices are aggrieved persons as defined in the FHA, 42 U.S.C. § 3602(i), and aggrieved applicants as defined in the ECOA, 16 U.S.C. § 1691e, and have suffered damages as a result of Defendants'

conduct as described herein.

21. The discriminatory policies and practices of the Defendants were intentional and willful, and were implemented with reckless disregard for the rights of black borrowers.

WHEREFORE, the United States prays that the Court enter an ORDER that:

22. Declares that the policies and practices of the Defendants constitute violations of the Fair Housing Act, 42 U.S.C. §§ 3601-3619, and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f;

23. Enjoins the Defendants, their agents, employees, and successors, and all other persons in active concert or participation with them, from:

    a. Discriminating on the basis of race or color against any person in making available, or in the terms or conditions of, a residential real estate-related transaction;

    b. Discriminating on the basis of race or color in the terms, conditions, or privileges of the provision of services in connection with the sale of dwellings;

    c. Discriminating on the basis of race or color against any person with respect to any aspect of a credit transaction;

    d. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of the Defendants' unlawful conduct to the position they would have been in but for the discriminatory conduct; and

    e. Failing or refusing to take such actions as may be necessary to prevent the recurrence of any such discriminatory conduct in the future.

24. Awards monetary damages to all the victims of the Defendants' discriminatory policies and practices for the injuries caused by the Defendants, pursuant to 42 U.S.C.

§ 3614(d)(1)(B) and 15 U.S.C. § 1691e(h); and

    25. Assesses a civil penalty against the Defendants in an amount authorized by 42 U.S.C. § 3614(d)(1)(C), in order to vindicate the public interest.

The United States further prays for such additional relief as the interests or justice may require.

| | |
|---|---|
| | ERIC H. HOLDER, JR.<br>Attorney General<br><br>THOMAS E. PEREZ<br>Assistant Attorney General<br>Civil Rights Division<br><br>STEVEN H. ROSENBAUM<br>Chief<br>Housing and Civil Enforcement Section |
| DAVID C. WEISS<br>United States Attorney | |
| SHANNON T. HANSON<br>Chief, Civil Division<br>Nemours Building<br>P.O. Box 2046<br>Wilmington, DE 19899-2046<br>302-573-6277 | DONNA M. MURPHY<br>Deputy Chief<br>HOWARD R. GRIFFIN<br>ROBIN L. DULL<br>Attorneys<br>U.S. Department of Justice<br>Civil Rights Division<br>Housing and Civil Enforcement Section<br>950 Pennsylvania Ave. NW – NWB<br>Washington, DC 20530<br>howard.r.griffin@usdoj.gov<br>robin.dull@usdoj.gov<br>202-514-4741<br>202-305-7780 |